UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

SHAMUEL ELLISON,

                                 Plaintiff,

          -against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF NEW
YORK ERIC ADAMS; POLICE COMMISSIONER FOR THE
CITY OF NEW YORK KEECHANT SEWELL; and NEW
YORK CITY POLICE DEPARTMENT MEMBERS JOHN and JANE
DOE #1-10;

                                 Defendants.

-------------------------------------------------------------------------------X

Case No.:

**VERIFIED
COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, SHAMUEL ELLISON, by his attorney MARYANNE K. KAISHIAN, a duly

admitted attorney with KAISHIAN & MORTAZAVI LLC, hereby complains of Defendants as

follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff Shamuel Ellison is a former United States Marine who was stationed in

North Carolina prior to his honorable discharge in 2022. Upon discharge, Mr. Ellison returned to

Kings County, New York, where he and his family, including his wife and five children, reside.

Mr. Ellison secured employment with the New York City Department of Education (DOE) as an

Education Specialist. In 2022 he took and passed the physical test for employment with the New

York City Police Department (NYPD).

2.     On the night of May 21, 2022, the vehicle that Mr. Ellison was operating was

unlawfully stopped and searched by NYPD Member Does #1-5. He was charged with possessing

the registered gun that was legally purchased during his deployment and residency in North

1

Carolina. As a result of this unlawful stop and search, and the false information provided to the Kings County District Attorney's Office, to lose his employment and income with the DOE, to lose his position on the roster for potential employment with the NYPD, and to suffer significant physical and emotional injuries.

3.　　　The case against him was dismissed on or about November 28, 2022.

## PARTIES

4.　　　At all times mentioned herein, Plaintiff, SHAMUEL ELLISON, was and is a resident of Kings County in the City and State of New York.

5.　　　At all relevant times mentioned herein, Defendant City of New York ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

6.　　　Defendant New York City Mayor ERIC ADAMS was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

7.　　　Defendant NYPD Commissioner KEECHANT SEWELL was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to

NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

8.      The true names and identities of the NYPD Member Defendants John or Jane Doe #1-10 are currently unknown to Plaintiff. They are referred to herein collectively as "Defendant Does."  At all times hereinafter mentioned, these Defendant NYPD Does were employed by the City of New York as members of the NYPD.

9.      At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

10.     Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

11.     The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

12.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

13.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

14.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendant NYPD Does, or any other member of the NYPD, take any steps to intervene in,

15.     Each individual Defendant is sued in her or his individual and official capacities.

16.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

17.     Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICTION, VENUE, and GML COMPLIANCE

18.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

19.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

20.     Plaintiff timely served Notices of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

21.     Mr. Ellison was examined by the Defendant City of New York pursuant to GML §50-h on May 15, 2023.

22.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

23.     This action was initiated within one year and ninety days of the accrual of all Plaintiff's claims pursuant to New York State Law.

## BACKGROUND

### *New York's Gun Enforcement History*

24.     Mr. Ellison was arrested one month prior to the Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v Bruen* (142 S Ct at 2134) addressing the constitutionality, or lack thereof, of New York State's may-issue licensing schema. Mr. Ellison—a military veteran, father, and educator with no criminal record and a valid out-of-state license to possess the very gun unlawfully seized by Defendants—was the "ordinary, law abiding, adult citizen" contemplated by *Bruen* Court when it deemed the very type of gun possession restrictions weaponized against him unconstitutional mere weeks later.

25.     The racially disparate enforcement of gun laws in New York State cannot be overstated, and relevant data and firsthand accounts on this issue were before the *Bruen* Court. *See* Brief of the Black Attorneys of Legal Aid, The Bronx Defenders, and Brooklyn Defender Services, et al. for the NRA as Amicus Curiae, *New York State Rifle & Pistol Assn., Inc. v Bruen*, 142 S Ct at 2134 ("Defenders' Amicus").

26.     The *Bruen* Court specifically rejected the New York State Respondents' reliance on the history of sureties in relation to gun possession regulation, stating that all available examples "all involve[d] black defendants who may have been targeted for selective or pretextual enforcement." *Bruen* at 2149. In this context it is particularly noteworthy that Mr. Ellison's family was forced to post bond and expend related costs due to Defendants' conduct. At the time of the Defenders' Amicus, 93% of all individuals languishing pretrial on Rikers Island on a top count of

Criminal Possession of a Weapon in the Second Degree were Black or Latin.[1]

27.     Indeed, evidence of the racial animus at play in the instant matter extends beyond the mere fact of criminalized gun possession. Mr. Ellison was arrested with four other young Black men—none of whom, other than Mr. Ellison, possessed or claimed to possess the firearm unlawfully discovered by Defendants in the vehicle. All were arrested due to the presence of a single registered gun. No allegations of additional criminal activity were levied against Mr. Ellison, nor were the individuals in the vehicle collectively alleged to have been engaged in a criminal conspiracy with one another at the time of the arrest.

28.     FOIL request submitted in October 2022 to the NYPD revealed that Mr. Ellison was not included on the Department's "Criminal Group Database," also known as the "NYPD Gang Database."[2]

29.     Nevertheless, the charges against Mr. Ellison, a Black man, were prosecuted by the Brooklyn District Attorney's Violent Criminal Enterprise Bureau, a unit of assistant prosecutors tasked with so-called "gang" enforcement.

30.     The intersection of these policing tactics—pretextual stops, criminalized association, and the disproportionate and systematic disarmament of Black New Yorkers—strikes at the very heart of the constitutional issue with New York's enforcement as it was implemented prior to the *Bruen* Court's June 2022 ruling. *See McDonald v City of Chicago*, 561 U.S., at 771, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (noting the "systematic efforts" made to disarm Black people).

---

[1] These disparities persist; as of the date of this Complaint, 75% of all individuals incarcerated in New York City's jails pretrial on a top charge of Criminal Possession of a Weapon in the Second Degree are Black. *See* NYC Open Data, Department of Correction Data, Racial Identity by Charge, *available at* https://data.cityofnewyork.us/Public-Safety/Daily-Inmates-In-Custody/7479-ugqb (last visited August 18, 2023).

[2] The NYPD's Gang Database itself is a catalogue of mostly Black and Latin New Yorkers with dubious criteria for entry. *See, e.g.*, Prof. Babe Howell, *Gang Policing: The Post Stop-and-Frisk Justification for Profile-Based Policing*, May 30, 2015, 5 DENVER CRIMINAL LAW REVIEW 1 (2015), Available at SSRN: https://ssrn.com/abstract=2662630.

31.     The Second Amendment guarantees every individual the right "to keep and bear arms." U.S. Const. Amend. II. Protection of this constitutional right extends to the States. *McDonald v. City of Chicago*, 561 U.S. 742 (2010); U.S. Const. Amend. XIV. This constitutional guarantee includes both the right to possess a gun inside the home as well as the "right to carry a handgun for self-defense outside the home." *District of Columbia v. Heller*, 554 U.S.570, 592 (2008); *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2122 (2022).

32.     This right necessarily extends to weapons both inside and outside the home. While *Heller* clearly established the right to keep arms inside the home, *Bruen* firmly held that this right extends to the right to bear arms outside the home. *Bruen*, 142 S. Ct. at 2122. The Court notes that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms." *Id*. at 2134. Particularly because the right to bear arms is inextricably bound to the right to self-defense, "confining the right to 'bear' arms to the home would make little sense given that self-defense is the 'central component of the [Second Amendment] right itself." *Id*. at 2135 (quoting *Heller*, 554 U.S. at 599). Furthermore, the "definition of 'bear' naturally encompasses public carry…To confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections." *Bruen*, 142 S. Ct. 2135.

33.     The *Bruen* Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129.

34.     Mr. Ellison's conduct was covered by the Second Amendment, but Defendants engaged in conduct and the institution policies of practices that interfered in his exercise of, and punished him for, the exercise of this right. Specifically, Defendants implemented policies of pretextual stops of Black New Yorkers and utilized the potential—or actual—presence of firearms to justify the execution of these policies and the resulting harms suffered by New Yorkers,

particularly Black New Yorkers.

*The Defendant Adams and NYPD Enforcement Policies in 2022*

35.     At the time of Mr. Ellison's arrest, Defendant City was aware that the NYPD and its agents were routinely violating the rights of New Yorkers in pursuit of disarmament—and openly espoused the belief that the ends justified the means.

36.     The underlying intent of policymakers with Defendant City was summed up by Commanding Officer of the NYPD's Gun Violence Suppression Division, James Savino, at a public appearance with Defendant Adams on June 6, 2022, touting gun seizures just two weeks after Mr. Ellison's arrest. Savino stated, "I share [Mayor Adams'] sentiment. When we include individuals in a takedown, these are by far the worst of the worst in the entire city, the trigger pullers, the alphas, the snakes' heads of the neighborhoods… Everybody knows who these individuals are."[3]

37.     Though this appearance was characterized as a so-called "gang takedown" briefing, Defendant Adams made clear that the NYPD enforced policies and justified civil rights incursions by equating gun possession with dangerousness and demonizing those arrested for mere possession. At the same appearance in June 2022, Mayor Adams emphasized this conflation, stating, "[The NYPD's] job is to take dangerous people off the street. My job and the job of my agencies is to prevent people from being dangerous." As proof, Defendant Adams touted that the Department's Neighborhood Safety Teams, formed by the Mayor as the latest iteration of the NYPD's Anti-Crime Unit[4], had taken "3,000 guns off the street."[5]

---

[3] The Official Website of the City of New York, *Transcript: Mayor Eric Adams Makes Announcement About NYPD Gun Violence Suppression Division*, June 6, 2022, available at https://www.nyc.gov/office-of-the-mayor/news/369-22/transcript-mayor-eric-adams-makes-announcement-nypd-gun-violence-suppression-division (last visited August 18, 2023).
[4] Sydney Pereira, *NYPD Disbands Plainclothes Anti-Crime Units*, GOTHAMIST, June 15, 2020, *available at* https://gothamist.com/news/nypd-disbands-plainclothes-anti-crime-units (last visited August 18, 2023).
[5] Sara Dorn, *NYPD's Neighborhood Safety Teams are mostly making low-level arrests, data shows*

38.     At the very same appearance, Mayor Adams confirmed the intent of the NYPD's policy was to prevent gun ownership of nearly any kind and the futility of civilians' attempts to procure legal permits, saying: "We restrict carry permits here. It's very difficult to get a carry permit. One could get, with the right credentials, can get a target permit."[6]

39.     In anticipation of the Supreme Court's then-pending *Bruen* decision, Defendant Adams further stated: "People hear of this right to carry. You should focus on it. If this right to carry, this keeps me up at night."[7]

40.     Even prior to Mr. Ellison's arrest, Defendant Adams and policymaker Defendants repeatedly defended the documented abuses of the NYPD, including its specialized units, as necessary in the service of disarmament. In April 2022, *City and State* released findings showing that NYPD initiatives touting gun violence suppression were primarily responsible for low-level stops and were under scrutiny for civil rights violations.[8]

41.     When asked for comment, a representative of the Defendant City, identified as a spokesperson for City Hall, stated, "In a matter of weeks, [NYPD Neighborhood Safety Teams] have rid our streets of more than 25 guns — guns that can no longer murder a child or any other innocent New Yorker."

## STATEMENT OF FACTS

42.     At the time of the events giving rise to this Complaint, Plaintiff Shamuel Ellison was a resident of Kings County, New York.

### *May 21 through May 22, 2022*

---

CITY AND STATE, April 8, 2022, *available at* https://www.cityandstateny.com/politics/2022/04/nypds-neighborhood-safety-teams-are-mostly-making-low-level-arrests-data-show/365450/ (last visited August 18, 2023).
[6] *Id*.
[7] *Id*.
[8] *Id*.

43.     At approximately 11:00 PM on May 21, 2022, in or around the Fort Greene New York City Housing Authority (NYCHA) housing development, near 277 Gold St., in Kings County, New York, Mr. Ellison was lawfully within a vehicle with four other passengers.

44.     Without cause or justification, Mr. Ellison was approached and detained by Defendant NYPD Member Does #1-8. The Defendant Doe(s) falsely asserted that Mr. Ellison had, in sum and substance, "failed to signal."

45.     The Defendant NYPD Member Does requested Mr. Ellison's identification, which he provided, along with his true legal name and status as a military veteran.

46.     The Defendant Does informed Mr. Ellison that his registration was expired, a traffic infraction for which custodial arrest is not permitted under New York State Criminal Procedure Law § 150.20(1)(a). Mr. Ellison provided Defendant Does with his true identity, had no warrants for his arrest, had not missed court within the prior two years, and did not otherwise qualify for any exceptions to CPL § 150.20.

47.     Nevertheless, without cause or justification, these NYPD Members ordered Mr. Ellison and his passengers to step out of the vehicle and continued to detain Mr. Ellison and the passengers.

48.     NYPD Doe #1, a white male, informed Mr. Ellison that he intended to search the vehicle.

49.     Mr. Ellison clearly and unequivocally informed NYPD Member Does #1-8 that they did not have his consent to search the vehicle or any compartments, items, bags, or containers therein.

50.     After all individuals provided the Defendant Does with pedigree information, Mr. Ellison encouraged the other passengers to invoke their right to remain silent and not to consent to any searches.

51. NYPD Does #1-8 proceeded to unlawfully search the vehicle and all compartments, items, bags, or containers therein as well as the individuals, including Mr. Ellison, who had occupied the car.

52. This search was not conducted as part of an inventory search nor was it conducted pursuant to lawful arrest.

53. NYPD Does opened a closed bag beneath the passenger seat of Mr. Ellison's vehicle that was not visible to the public or to NYPD Does prior to the unlawful search of Mr. Ellison's car.

54. Defendant Does located Mr. Ellison's legally obtained firearm bearing serial number # 500181925 during this unlawful search.

55. No other firearms or illegal items were recovered during the unlawful search.

56. Mr. Ellison and all the passengers within the vehicle were arrested by NYPD Does and transported to the NYPD's 88th Precinct at Classon Ave. and Dekalb Ave. in Kings County at approximately 12:00 AM on May 22, 2022.

57. At least one of NYPD Member Does #1-8 placed overly tight handcuffs on Mr. Ellison's wrists. Mr. Ellison complained that the handcuffs were causing him pain and swelling, but no NYPD Members loosened them.

58. At least two Defendant Does yanked Mr. Ellison by the arm while forcibly escorting him to the police car, causing pain and injury to his shoulder.

59. Mr. Ellison spent approximately 24 hours in NYPD custody prior to his arraignment. Mr. Ellison was not provided with a phone call or food. He was held in filthy and inhumane conditions.

60. Mr. Ellison spent approximately twelve hours in the custody of the NYPD at the 88th Precinct prior to being transferred to the NYPD's Brooklyn Central Bookings at 120

Schermerhorn St. During this period, at least two individual Defendant Does repeatedly interrogated Mr. Ellison despite his requests for a lawyer and unequivocal communication that he wished to remain silent.

61.     These Defendant Does informed Mr. Ellison, in sum and substance, that, despite possessing a permit and legal purchase history for the gun, he should allege that another individual in the vehicle possessed the handgun.

62.     These Defendant Does further demanded that Mr. Ellison provide them with information regarding gangs, guns, and criminal activity, and repeatedly attempted to induce Mr. Ellison to falsely implicate the car's passengers. Mr. Ellison refused.

63.     Defendant Does impermissibly and intentionally extended Mr. Ellison's already unlawful time in custody in an attempt to coerce him to provide the information they sought, even though these Defendant Does knew this information to be untrue.

64.     On or about May 22, 2022, Mr. Ellison was charged with PL§ 265.03, PL § 265.02, PL § 265.01-B, PL § 265.01, VTL § 1163, VTL §319, VTL § 401, VTL §511, VTL § 509, AC § 10-131, and arraigned in Brooklyn Criminal Court at 120 Schermerhorn St., Kings County, New York, on allegations stemming from NYPD Member Does' unlawful search and seizure and their false description thereof. He had bail set in the amount of $20,000, and his family was required to post a $2,000 bond to secure his release.

65.     As a result of this arrest, Mr. Ellison was suspended from his job at the Department of Education. He received no pay from his arrest until the time the case was dismissed approximately six (6) months later. Mr. Ellison was further suspended from consideration for employment with the NYPD.

66.     While Mr. Ellison's charges were pending, the NYPD maintained control of his vehicle, which they deemed forfeited. In exchange for the return of his vehicle, the NYPD stated

that Mr. Ellison would need to waive any property claims to his legally purchased firearm. Mr. Ellison required his vehicle for childcare, family matters, and as part of his job search, as he was now unemployed. He entered a stipulation for his property.

67.     Mr. Ellison retrieved his vehicle on or about August 24, 2022.

68.     While in the custody and control of the NYPD, Mr. Ellison's vehicle sustained new damage to the undercarriage, body, and interior requiring repairs and causing Mr. Ellison to expend costs.

69.     Defendants' conduct subjected Mr. Ellison to lost income, deprived him of his property, and him forced to expend costs, including to repair his vehicle. Defendants' conduct has caused Mr. Ellison serious pain, suffering, and injuries, including exacerbated injuries to his left wrist and shoulder, and mental anguish as well as pecuniary damages.

70.     The case against Mr. Ellison was dismissed in its entirety on or about November 28, 2022.

71.     Mr. Ellison now brings the instant case before this Court.

### FIRST CLAIM FOR RELIEF

#### Unlawful Search and Seizure

***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution***

72.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

73.     Defendants' seizure of the Plaintiff herein was done without any judicial warrant authorizing them to search or seize any Plaintiff or his property, was unreasonable, and was done without privilege or lawful justification.

74.     Plaintiff did not consent to any search and was conscious of his confinement by Defendants.

75.     Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiff.

76.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; interfered with his right to security and privacy; and/or otherwise damaged and injured Plaintiff.

77.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

78.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

79.     Defendants' use of force against Plaintiff was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

80.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

81.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Violations of Plaintiff's Due Process Rights

*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution*

82.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

83.     Defendants City, Defendant Adams, and Defendant Sewell designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiff and subjected Plaintiff to the violations of his Due Process rights described elsewhere herein.

84.     Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty and property without due process of law.

85.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

86.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability

*Against Defendants City, Adams, and Sewell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution*

87.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

88.     Policymaker Defendant Adams, and Defendant Sewell were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

89.     The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to: policies of unlawful searches and seizure under the banner of gun licensing enforcement; violations of the Second Amendment rights of Black New Yorkers, such as Plaintiff; restrictions on freedom of association; and unlawful vehicular searches and seizures.

90.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

a.  Formal policies, rules, and procedures of Defendant City;

b.  Actions and decisions by Defendant City's policymaking agents including, but not limited to, Defendants Adams and Defendants Sewell;

c.  Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant Adams and Defendant Sewell, and other policymaking officials;

d.  Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

e.

## FIFTH CLAIM FOR RELIEF

### False Arrest

***Against Defendant City and Defendant NYPD Members Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

91.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

92.     Defendants unlawfully restricted Plaintiff's movement and deprived Plaintiff of his liberty without a lawful warrant and without probable cause.

93.     The facts available to the NYPD Defendants at the time of Plaintiff's arrest failed to support the charge against him. Nevertheless, Defendants unlawfully arrested and detained Plaintiff.

94.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

95.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

96.     All charges against Mr. Ellison were dismissed on November 28, 2022.

## SIXTH CLAIM FOR RELIEF

### Excessive Detention

***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

97.     Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

98.     Plaintiff was held in custody for approximately 24 hours by NYPD Defendants without justification or cause.

99.     This detention violated Plaintiff's right to be free from continued detention and was predicated upon false allegations by NYPD Defendants.

100.     Defendants' conduct in continuing to detain Plaintiff was motivated by Defendants' ill will and/or in an attempt to gather additional evidence to justify Plaintiff's arrest and/or delay for delay's sake.

101.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

102.     Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SEVENTH CLAIM FOR RELIEF

### Malicious Prosecution

***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiff's Rights Under the Second, Fourth and Fourteenth Amendments to the United States Constitution***

103.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

104.     Defendants instituted or caused the claim against Plaintiff to be instituted without any probable cause. Defendants provided false information to further the criminal prosecution of Plaintiff.

105.     Defendants' motive in instituting the suit was malicious, and the prosecution of Plaintiff was terminated in his favor when the Kings County District Attorney dismissed the charges against him, thus dismissing the charge against Plaintiff.

106.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of his liberty and his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

107.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

**Plaintiff's Rights Under the Second Amendment and Takings Clause**

*Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the Second, Fifth and Fourteenth Amendments to the United States Constitution*

108.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

109.     Defendants imposed restrictions on such protected conduct that violated Plaintiff's Second Amendment rights, including, but not limited to, in unlawfully seizing Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in depriving Plaintiff of his property for public gain, subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

110.     Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such conduct.

111.     Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

112.     Defendants' conduct did deter Plaintiff from constitutionally protected conduct.

113.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights.

114.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's Second Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

115.    Upon information and belief, Defendants did not subject other others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

116.    Plaintiff suffered actual chill, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected conduct; and/or otherwise suffered some concrete harm(s).

117.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First, Second, and Fourth Amendment rights described elsewhere herein.

118.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

119.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

## NINTH CLAIM FOR RELIEF

**First Amendment Retaliation and Impermissible First Amendment Restriction**

*Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

120.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

121.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

122.    In addition to being retaliatory, the restrictions Plaintiff complains of herein, which Defendants imposed upon Plaintiff's First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment on the streets, were themselves regulations on Plaintiff's protected conduct that:

a.    Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

b.    Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened; and/or

c.    Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiff's abilities to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d.    Amounted to the imposition of strict liability on Plaintiff for engaging in protected speech and/or expression.

123.   Defendants further engaged in retaliation against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, including his association with Plaintiff's association with individuals in his vehicle.

124.   Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

125.   Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

126.   Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

127.   Defendants' conduct did deter Plaintiff from free association and free speech, including by deterring him from reporting his illegal eviction to the same Department that had caused this harm.

128.   Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights, particularly his right to free association.

129.   Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

130.   Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs

and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiff, including the invocation of his right to silence and to counsel, and his encouragement of others to do the same.

131.    Upon information and belief, Defendants did not subject other others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

132.    Plaintiff suffered actual chill, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

133.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First Amendment rights described elsewhere herein.

134.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

135.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

136.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## TENTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise

***Against Defendants City, Adams, and Sewell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v.</u>***
***<u>Department of Social Services</u>, 436 U.S. 658 (1978)***

137.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

138.    Defendant City, and its agents Defendants Adams and Sewell, failed to train and supervise the Defendant NYPD Members.

139.    All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Ellison' injuries.

140.    Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

141.    Defendants know that NYPD Members are certain to regularly encounter situations such as those described herein—including the police approach and/or arrest and/or vehicular search of Black men—through the course of their employment.

142.    Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

143.    Defendants also knew that individual NYPD Defendants have a documented history of adverse credibility findings and/or abusive conduct against individuals they encountered during their employment.

144.    Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries.  Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

24

145.    By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

146.    The harms suffered by Plaintiff are the direct result of Defendants' failures.

## ELEVENTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention

**_Against Defendants City, Adams, and Sewell Pursuant to 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978)_**

147.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

148.    All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Ellison' injuries.

149.    Defendant City and its agents Defendants Adams and Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Mr. Ellison' injuries.

150.    Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

151.    Such documented history of Defendants' willingness to lie and/or misrepresent facts while under oath and/or otherwise cause harm to individuals subjected to interactions with police renders Defendants' conduct both predictable to and preventable by policymaker Defendants.

152.    Rather than removing or disciplining NYPD members who have provided non-credible testimony to courts, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiff. Such conduct is so foreseeable as to rise to the level of deliberate indifference.

## TWELFTH CLAIM FOR RELIEF

**Breach of Duty to Protect**

***Against All Defendants Pursuant to 42 U.S.C. § 1983***

153.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

154.    The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

155.    Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

156.    Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## THIRTEENTH CLAIM FOR RELIEF

**Equal Protection and Selective Enforcement**

***Against All Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fourteenth Amendment to the United States Constitution***

157.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

158.    As discussed elsewhere herein, Defendants City, Adams, and Sewell, designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining Plaintiff thus subjected Plaintiff to the above-described violations of Plaintiff's Equal Protection rights.

159.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

160.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTEENTH CLAIM FOR RELIEF

### Conspiracy

### *Against All Defendants Pursuant to 42 U.S.C. § 1985(3)*

161.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

162.    Through the conduct described and complained of herein, Defendants conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

163.    Defendants acted in furtherance of this conspiracy against Plaintiff, and as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

## FIFTEENTH CLAIM FOR RELIEF

### Failure to Prevent Civil Rights Violations

### *Against all Defendants Pursuant to 42 U.S.C. § 1986*

164.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

165.    Defendants, including individual NYPD Defendants, had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aid in preventing the commission of this conduct.

166.    Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

167.    Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

### SIXTEENTH CLAIM FOR RELIEF

**Violations of New York State and/or New York City Law**

***Pursuant to the New York State Constitution and New York State Common Law***

168.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

***Respondeat Superior***

169.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

**Violations of the New York State Constitution**

170.    Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

171.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

**Unlawful Search and/or Seizure**

***Pursuant to the New York State Constitution and the <u>New York City Administrative Code
Chapter 8, Title 8, § 8-801 et seq.</u>***

172.    The NYPD Defendants are covered individuals as defined in <u>NYC Admin. Code
Ch. 8, Tit. 8, § 8-801</u>.

173.    As described above, the Defendants violated Plaintiff's right to be free from
"unreasonable searches and seizures, and to be secure against the use of excessive force regardless
of whether such force is used in connection with a search or seizure."

174.    The NYPD Defendants and their employer, including the Defendant City, are liable
to Plaintiff for this conduct.

175.    Defendants may not invoke the defense of qualified immunity.

176.    Plaintiff is entitled to compensatory and punitive damages, attorney's fees and
costs, and an order restraining the Defendants from engaging in further violative conduct.

**False Arrest, False Imprisonment and Unreasonable Detention**

177.    By the actions described above, the police officials described above did falsely
detain Plaintiff within the meaning of New York common law without reasonable or probable
cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff
were conscious of the confinement and it was without their consent.

178.    The NYPD Defendants did not have the lawful authority to arrest Mr. Ellison under
the <u>New York State Criminal Procedure Law § 150.20(1)(a)</u> for the alleged infraction of driving
with an expired registration. Mr. Ellison did not qualify for any of the exceptions to the CPL
forbidding custodial arrest for minor offenses.

179.    Defendants did not have the lawful authority to arrest Plaintiff and/or search
Plaintiff and his personal belongings having accused him only of a traffic infraction under the
Vehicle and Traffic Law, regardless of its validity.

180.    All charges against him were dismissed.

## Intentional and Negligent Infliction of Emotional Distress

181.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

182.    By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

183.    The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

184.    As a result of the foregoing, Plaintiff was deprived of her liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## Assault and Battery

185.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

186.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

187.    Defendants did thereby inflict assault and battery upon the Plaintiff.

## False Imprisonment and Unreasonable Detention

188.    By the actions described above, the Defendants described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was conscious of the confinement, and it was without his consent.

**Intentional and Negligent Infliction of Emotional Distress**

189.    By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiff.

190.    The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

191.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

**Malicious Prosecution and Fabrication of Evidence**

192.     Defendants provided false information to initiate criminal proceeding against Plaintiff and undertook his arrest without probable cause. Defendants demonstrated actual malice against Plaintiff.

193.    The criminal prosecution against Plaintiff terminated in his favor when the Kings County District Attorney's Office dismissed his charges on or about November 28, 2022.

**Negligent Training, Retention, Hiring and Supervision**

194.    Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

195.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Mr. Ellison' injuries.

196.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**Conversion**

197.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

198.     Defendants interfered with and/or eliminated his right to enjoy and/or access and/or use his tangible property, including through damage and/or permanent deprivation of Plaintiff's property.

199.     Defendants inconvenienced Plaintiff and forced him to expend costs as a result of this interference and damage.

200.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**CONCLUSION AND DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against the individual Defendants and the City of New York as follows:

i.     Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages in an amount to be determined at trial against the City of New York;

iii.     Policy change;

iv.     Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, the New York City Administrative Code, and New York State common law; and

v.       Such other relief as the Court deems just and proper.

Dated:       New York, New York
             August 18, 2023

                               **KAISHIAN & MORTAZAVI LLC**

                               By: _____
                               MARYANNE K. KAISHIAN
                               **KAISHIAN & MORTAZAVI LLC**
                               55 Washington Street, Ste. 508
                               Brooklyn, New York 11201
                               T: (347) 662-2421
                               E: mk@kaishianlaw.com

## VERIFICATION

STATE OF NEW YORK )

                         ss.:

COUNTY OF KINGS )

      I, Shamuel Ellison, the Plaintiff in the above action, affirms the following under penalties of perjury:

1. I am the Plaintiff herein.

2. I have read the attached Claim and the information contained in same is true and to my own knowledge except as to matters therein alleged to be on information and belief, and as to those matters I believe them to be true.

Dated: _AUGUST 18_ , 2023

Signed: _____

Print Name: _Shamuel Ellison_

STATE OF NEW YORK )

                         SS.

COUNTY OF _Kings_ )

this _18th_ day of _August_, 2023 before me personally came _SHAMUEL ELLISON_, known to me to be the person described in and who executed the foregoing instrument and they acknowledged to me that they executed the same.

> MARYANNE K. KAISHIAN
> Notary Public - State of New York
> No. 02KA6436800
> Qualified in Kings County
> My Commission Expires 07/25/2026

_____

Notary Public